---

## In re TOBIN'S WILL.

(Supreme Court, Appellate Division, Second Department. June 29, 1908.)

1. WILLS—UNDUE INFLUENCE—EVIDENCE.
Evidence *held* insufficient to sustain findings of a surrogate that a will propounded for probate was the result of undue influence exercised by proponent over the testator.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 421–437.]

2. SAME—TESTAMENTARY CAPACITY.
Evidence *held* insufficient to show that testator had not testamentary capacity.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 137–161.]
Miller, J., dissenting.

Appeal from Surrogate's Court, Kings County.

Application for probate of the will of William Tobin, deceased. From a surrogate's decree denying probate, petitioner, Thomas F. Bannon, and William J. Tobin, a legatee, appeal. Reversed on the facts, and remanded for trial by a jury on the issues.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Henry E. Heistad, for appellants.
John S. Wise, for respondent.

HOOKER, J. Probate of the will of the deceased, William Tobin, was denied by the learned Surrogate's Court upon the contest of Rosie Pattison, a half-sister, the only next of kin. The grounds which actuated the court below were that the deceased was not competent to execute the will, and was under restraint and undue influence exercised upon him by William J. Tobin, the principal beneficiary. Deceased was about 62 years old, and he and his half-sister, the contestant, lived together until the latter's marriage, which occurred a few years before his death. During about five years prior to his death he had lived with his cousin, William J. Tobin, the principal beneficiary, much, if not all, of the time. About three weeks before his decease he went to a hospital for the purpose of undergoing an operation for a cancerous growth on the face, from which he had been suffering for about a year.

The only direct evidence of undue influence was the testimony of Rosie Pattison. In company with her husband, she called upon William J. Tobin a few weeks after the death of the testator, and the conversation turned upon a certain Miss Edelbaum. Mrs. Pattison testified that her husband said to Tobin:

"I think that Miss Edelbaum should be remembered, if anybody, because she took good care of him [the deceased] at Coney Island, before he went to the hospital; and he would have died one night, only she sat up with him all night. If anybody ought to be remembered, she ought to be."

The record then goes:

"He said: 'It is up to you. He wanted to remember her; but I said, "No." ' My brother wanted to remember her. The deceased was the one who said he wanted to remember her."

The husband, Mr. Pattison, however, did not recall that William J. Tobin made any statement in relation to the desire of the deceased in this respect. From a reading of the whole record, it does not seem to me that there is any inference to be drawn that the will as finally prepared and executed did not express the true desire of the testator. On the other hand, it is to be noticed that the first provision of the will, after the direction of payment of debts, is a bequest to this half-sister herself of the sum of $100. Testator then bequeathed $100 to a Miss Murphy, $500 for the purpose of erecting a gravestone and keeping his grave in repair, and the residue of his personal property, all of which amounted to only about $2,000, to his cousin, William J. Tobin. The conduct of the latter prior to the decease of the testator certainly did not disclose any desire on his part unduly to influence the deceased; for it distinctly appears that deceased had been urging William J. Tobin for many weeks to bring a lawyer to him so as to prepare his will. Finally at the earnest solicitation of the deceased he agreed to go out to the hospital three days before his death and bring a lawyer with him; but he did not. This so disappointed the testator that on the day before he died he urged the doctors to allow him to leave the hospital for the purpose of closing up this matter and making his will. William J. Tobin was communicated with, and went to the hospital that evening with a lawyer and two witnesses, and the will was executed. The next day the deceased died.

On the mental incompetency of the testator there is more evidence; but it is principally to be found in the testimony of the night nurse at the hospital. The people came to execute the will at about 8 o'clock, and this nurse testifies that at about half-past 7 the deceased could not articulate so that she could understand him. It seems that this cancerous growth of the face, and the operations which had been had, were such as to interfere with the ability of the deceased to make himself understood. The nurse also says that at 10 o'clock the deceased was in a stuporous condition. She admits that others might have been able to understand him, but says she was not. On the other hand, there is the evidence of three doctors connected with the hospital that his mental condition was not impaired as the result of his suffering, and that he was able to articulate sufficiently to make them understand him. There is the evidence of the two subscribing witnesses, one of whom had known the deceased all his life, and the other for about five years, that they understood him distinctly and heard him give instructions as to how his will should be prepared. There is the evidence of the principal legatee, and of the lawyer who prepared the will, that the testator was asked how he wanted it prepared, and told them distinctly what he wanted put in the will; and this was done.

Much stress is laid by the respondent upon the fact that the half-sister of the deceased is spoken of as "Mrs. William Patterson," rather than as "Mrs. Joseph Pattison," or "Rosie." Both the lawyer who drew the will and the principal beneficiary, however, state that the name was correctly given by the deceased to the scrivener, and this is doubtless so. The error evidently crept in at the instance of the lawyer, who first took memoranda from the testator's dictation and then drafted the will from them.

We conclude that the decree refusing probate should be reversed upon the facts, with costs to abide the event; and, pursuant to the mandate of section 2588 of the Code of Civil Procedure, the issues are directed to be tried by a jury. The place of the trial and the question to be tried must be stated in the order, which will be settled upon notice.

Decree of the Surrogate's Court of Kings county reversed, and issues ordered to be tried by a jury, with costs of the appeal to abide the event of the new trial, payable out of the estate. All concur, except MILLER, J., who dissents.